IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DOLORES CHAVEZ,

       Plaintiff,

vs.                                                                                                        No.  07cv0554 DJS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** is before the Court on Plaintiff's (Chavez's) Motion to Reverse and Remand for a Hearing **[Doc. No. 13]**, filed on September 25, 2007, and fully briefed on November 26, 2007.  On December 15, 2005, the Commissioner of Social Security issued a final decision denying Chavez's claim for disability insurance benefits.  Chavez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED**.

**I.  Factual and Procedural Background**

      Chavez, now fifty-three years old (D.O.B. November 10, 1953), filed her application for disability insurance benefits on February 4, 2004 (Tr. 1), alleging disability since February 1, 1998, due to back injury, neck pain, arthritis and depression.  Tr. 19.  However, at the administrative hearing, Chavez amended her alleged onset date to November 10, 2003.  Tr. 340-

343).[1]  Chavez's insured status for disability insurance benefits expired on September 30, 2001.  Tr. 26.  Thus, Chavez must establish that she was disabled on or before that date.  *See Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993).  Chavez has a twelfth grade education and past relevant work as a personal attendant, cook, cashier, and babysitter.  Tr. 18, 118.

On December 15, 2005, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Chavez was not disabled as she retained the residual functional capacity (RFC) to perform light work and thus could perform "all of her past relevant work on or before her date last insured of September 30, 2001."  Tr. 26.  The ALJ further found Chavez's allegations regarding her limitations "[were] not totally credible."  *Id.*  On January 27, 2006, Chavez filed a Request for Review of the decision by the Appeals Council, along with additional evidence from Lovelace Medical Center covering the period of **September 1987 through March 1996**.[2]  On April 27, 2007, the Appeals Council denied Chavez's request for review of the ALJ's decision.  Tr. 6.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Chavez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

---

[1] In her January 27, 2006 Request for Review to the Appeals Council, Chavez argued the "correct alleged onset date of disability is February 1, 1998."  Tr. 11.

[2] Although the new evidence was not before the ALJ, it was before the Appeals Council.  Tr. 7.  Therefore, the Court must consider it when evaluating the Commissioner's decision for substantial evidence.  *See, O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)(new evidence becomes part of the administrative record to be considered by the Court when evaluating the Commissioner's decision for substantial evidence).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

"'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200

(10th Cir. 2004)). The court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zolantski*, 372 F.3d at 1200).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse and remand, Chavez makes the following arguments: (1) the ALJ erred in finding her mental impairment not severe and in failing to develop the record

4

regarding her anxiety and depression: (2) the ALJ's RFC determination is not supported by substantial evidence and is contrary to law; and (3) the ALJ's pain and credibility findings are not supported by substantial evidence.

## A. RFC Determination

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion. See SSR 96-8p, 1996 WL 374184, at *7. The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* at 1. The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.* at 7. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.*

Chavez contends the ALJ's RFC determination is not supported by substantial evidence. Chavez contends she has had "pain-producing" impairments during the time in question and "can perform neither [light work or sedentary work]." Pl.'s Mem. in Support of Mot. to Remand at 8.

In her decision, the ALJ found in pertinent part:

Regulation 20 CFR §404.1572 defines substantial work activity as work that involves doing significant physical or mental activities. Work can be considered substantial even if it is done

5

on a part-time basis or if less money is earned or work responsibilities are lessened from previous employment. Gainful work activity is the kind of work usually done for pay or profit, whether or not a profit is realized. The claimant has not engaged in substantial gainful activity since her amended onset date.

Prior to her date last insured the claimant testified that she started taking care of her mother in 1997. She testified that she took care of her mother until 2002. She testified that she assisted with the personal needs of her mother on a full time basis. The claimant stated that her sisters also helped but she was the primary person responsible for her mother. The claimant's earnings record showed no earnings during this time frame. (Exhibit 1D/4). Although the claimant had no reported earnings during this time period she however, did have the functional capacity to perform substantial activity on and before her dated insured of September 30, 2001. She was able to take care of her mother. Nonetheless, I will proceed to the remaining steps of the sequential evaluation process.

\*\* \*\* \*\* \*\* \*\*

The medical evidence indicates that the claimant has chronic mechanical low back pain, neck pain, right leg pain, spondylosis with retrolisthesis at C5-6, and is status post three back surgeries that included an L4-5 fusion in 1998, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. I have carefully reviewed the impairments including the impairments listed in Listing 1.04A and conclude that the claimant falls short of satisfying listing-level severity criteria to be presumed disabled.

I must next determine whether she retains the residual functional capacity to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy. The term "residual functional capacity" is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks (20 CFR §404.1545 and Social Security Ruling 96-8p).

In making this assessment, I must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §404.1529, and Social Security Ruling 96-7p. I must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CRF §404.1527 and Social Security Ruling 96-2p and 96-6p).

Accordingly, I find that the claimant has the residual functional capacity to perform light work during the time period on or before her date last insured of September 30, 2001.
The only medical evidence on or before the claimant's date last insured of September 30, 2001, were medical records indicating that she had three previous low back surgeries; the last one was performed in 1998 which included a L4-5 fusion. It was noted that the surgeries had helped her significantly and that she had very little pain since then. (Exhibits 6F/13 and 7F/5).

6

Tr. 19-21.  In finding Chavez had the RFC to perform light work prior to her date last insured of September 30, 2001, the ALJ pointed out that Chavez had cared for her mother from 1997 to 2002.  At the administrative hearing the following colloquy took place:

> ALJ: How long did you take care of your mother?
>
> Chavez: Almost 4 years, I think.
>
> ALJ: And when was that, do you remember the years?
>
> Chavez: '97 through 2002, I think.
>
> ALJ: And what kind of things did you have to do to care for her?
>
> Chavez: Give her her medications and just watch her.
>
> ALJ: Did you have to assist her with her personal needs?
>
> Chavez: Yes.
>
> ALJ: And was that a full time job?
>
> Chavez: Yes.
>
> ALJ: Did you have any help with that?
>
> Chavez: My sisters.
>
> ALJ: Were you the primary person responsible?
>
> Chavez: Yes.

Tr. 323-324.  Chavez's attorney further questioned her on this issue.  Chavez testified she assisted her mother in bathing and dressing but was clear that it was not a physical task for her.  In fact, Chavez testified her mother dressed herself and she was there only to "like help her."  Tr. 331. Nonetheless, the ALJ concluded Chavez was working full-time during the time she took care of her mother.  The ALJ commented, "Because quite frankly, I think she was working full time.  She

7

may not have been being paid, but I think what she was doing, other people do as a full time position, so actually it could be looked at as activity at the level of substantial gainful activity." Tr. 340-341.  In addition, prior to taking care of her mother, Chavez testified she left her job with American Legion in 1997 because she "couldn't lift pots and pans when they were full" due to pain.  Tr. 323.  Chavez also testified her employer "hired a guy to help me out with that [lifting of pots, pans and cleaning the kitchen]."  Tr. 331.  Significantly, Chavez testified she had not "been pain free since the first surgery."  Tr. 334.

On August 30, 2002, Elizabeth Toman, M.D., noted Chavez had been on Ultram (a type of narcotic-like oral pain reliever prescribed to control moderate to moderately severe pain) 50 mg twice a day "for years for chronic back pain."  Tr. 116.  Additionally, on February 9, 2004, Dr. Castillo noted Chavez had "a history of cervical neck problems with neck pain in the past."  Tr. 137.  Dr. Castillo also assessed Chavez with "acute exacerbation of chronic mechanical cervical neck pain."  Tr. 139.

Notably, the evidence before the Appeals Council supports Chavez's allegations of chronic pain following her three surgeries.  As late as February 28, 1996, a report from Lovelace Medical Center indicates Chavez continued to have problems post discectomy at L4-5 and suffered from "low back pain with radiation into the right and left legs."  Tr. 188.  On that day, the neurosurgeon diagnosed Chavez, *inter alia* with (1) recurrent herniated nucleus pulposus L4-5 right; (2) adhesions of neural elements at L4-5; and (3) right and left lower extremity pain.  *Id.* The neurosurgeon performed the following procedures: "(1) Reexploration of L4-5 right with removal of further disc material; (2) Decompression of scar tissue at L4-5; (3) Exploration and

hemipartial laminectomy and foraminotomy on the left at L4-5; and (4) Reinforcement of previous fusion."  Tr. 188.

In her December 15, 2005 decision, the ALJ noted "[t]he majority of the medical evidence in the record was after her date last insured of September 30, 2001."  Tr. 21.  Moreover, at the administrative hearing the ALJ also voiced her concern regarding the scant medical records stating: "I think that's our problem here.  And I'm not sure that there's anything at the time of Date Last Insured expired that show that those problems existed.  We have very limited medicals in this case right now."  Tr. 341.  The ALJ also stated, "It's hard from these medical records to even discern that fact that she's had all the surgeries she's had."  Tr. 342.

Therefore, the ALJ did not have the benefit of reviewing the medical records (which are extensive and material) submitted to the Appeals Council.  Accordingly, the Court finds that the ALJ's RFC finding is not supported by substantial evidence and will remand this action for a rehearing to allow the ALJ to review the additional medical records and redetermine Chavez's RFC and reconsider her credibility finding.  Based on the additional medical evidence, the Court agrees with Chavez that her onset date of disability should be corrected to February 1, 1998.  On remand, the ALJ shall order an RFC assessment from Dr. Castillo, an orthopedic surgeon and her treating physician.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**